UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHAUN DARNELL GARLAND,

Plaintiff,

v.

CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,

Defendants.

No. 2:23-cv-00418 DAD SCR

ORDER AND

FINDINGS AND RECOMMENDATIONS

Plaintiff is incarcerated in state prison and proceeding pro se with this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the undersigned is defendants' motion for summary judgment. ECF No. 38. For the reasons set forth below, the undersigned recommends that defendants' motion be GRANTED IN PART and DENIED IN PART as follows:

1. GRANTED in favor of defendant Dr. Chaudhry in her individual capacity as to plaintiff's First Amendment Free Exercise claim; and

2. DENIED as to plaintiff's Religious Land Use and Institutionalized Persons Act (RLUIPA) claim for injunctive relief against defendants California Department of Corrections and Rehabilitation ("CDCR") and Dr. Chaudhry in her official capacity.

////

////

## PROCEDURAL HISTORY

This action is proceeding on plaintiff's first amended complaint ("FAC") filed on February 23, 2024.[1] ECF No. 16. The California Health Care Facility ("CHCF") provides a pre-dawn "Suhoor" meal to all Muslim participants in the Ramadan fast. Plaintiff alleges defendant Dr. Chaudhry, his primary care provider, denied his request to join the Suhoor meal because he was on a purée diet. Id. at 4, 7. This deprivation caused plaintiff's "failure to complete Ramadan fast[.]" Id. at 3. On January 6, 2025, the undersigned screened the FAC pursuant to 28 U.S.C. § 1915A and determined it stated a First Amendment Free Exercise claim for damages against Dr. Chaudhry and a RLUIPA claim for injunctive relief against CDCR and Dr. Chaudhry in her official capacity, but no other claims. ECF No. 20.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. Parties' Briefing

Defendants filed a motion for summary judgment on February 2, 2026. ECF No. 38. Defendant Chaudhry argues that plaintiff cannot establish a claim for a violation of the Free Exercise Clause under the First Amendment. First, she maintains that plaintiff's free exercise was not substantially burdened because he could save the puréed meals delivered on a normal schedule for consumption after sunset. Id. at 14-15. Second, even if plaintiff's religious practice was substantially burdened, Dr. Chaudhry kept plaintiff on a puréed diet for legitimate, healthcare-related reasons. Id. at 15-19. In the alternative, defendant Chaudhry claims that she is entitled to qualified immunity. Id. Defendants CDCR and Dr. Chaudry in her official capacity seek summary judgment on grounds plaintiff's RLUIPA claim is moot. Id.

Plaintiff filed an opposition consisting of twenty-four verified affidavits, one for each of defendants' statements of undisputed fact. ECF No. 48. Plaintiff's specific responses and denials are discussed in the "Statement of Facts" section below. Plaintiff also submitted a verified declaration regarding his experiences with Ramadan meals in 2026 to refute defendants' claim

---

[1] On October 3, 2024, the undersigned issued findings and recommendations that plaintiff be ordered to pay the filing fee in order to proceed with this action because he accrued three strikes under 28 U.S.C. § 1915(g) prior to filing this action. ECF No. 18. Plaintiff paid the filing fee prior to the adoption of those findings and recommendations. See Docket.

that his RLUIPA claim is moot. ECF No. 48-1. Plaintiff did not raise legal arguments, but the undersigned will discuss his declarations where relevant to defendants' arguments.

Defendants argue on reply that plaintiff's verified statements do not create triable disputes because they contradict his medical records and deposition testimony. ECF No. 51. Defendants also argue plaintiff's allegations regarding his experiences with the 2026 Ramadan meals do not revive his RLUIPA claim. But even assuming his RLUIPA claim is not moot, their actions did not substantially burden plaintiff's religious practice, and even if they did, restricting his medical meals to being served at certain hours was taken in furtherance of a compelling government interest and was the least restrictive means of furthering that interest. Id. at 7-9.

Plaintiff sought leave to filed a sur-reply that includes evidence of alleged confiscation of his legal documents, related staff misconduct complaints, and other records of alleged interference with his ability to prosecute this action. ECF No. 52. While the documents are not particularly helpful to resolving this motion, the undersigned will grant plaintiff's request to ensure a full record. See Local Rule 230(m).

## STATEMENT OF FACTS

### I. Ramadan Observance

#### A. Defendants' Facts

Ramadan is a holiday observed for one month every year by Muslims around the world. Ramadan's annual beginning and ending dates vary based on the location and first sighting of the new moon. Ramadan participants fast during the day and only eat between sunset and sunrise. Defendants' Statement of Undisputed Facts ("SUF") 1. The meal Muslims consume in the evening, upon the first sighting of the moon, is called Iftar. SUF 2. The pre-dawn meal is called Suhoor (sometimes spelled Suhur or Sahoor). SUF 3.

In 2022, Ramadan started on April 1, 2022, and ended at sundown on May 1, 2022. SUF 4. Before Ramadan, CHCF inmates signed up to be on the Ramadan list to participate in ceremonial religious services and to be eligible to be served their food on the Ramadan schedule. SUF 5. The Ramadan schedule at CHCF allows inmates to receive a Suhoor bag filled with shelf stable foods delivered to their cells so inmates can consume their breakfast and lunch meals in

their cells before sunrise. SUF 6. They also receive an Iftar meal delivered to their cells so that they can take it to the Chapel or consume it in their cells after sunset. SUF 7.

**B. Plaintiff's Rebuttal**

Plaintiff disputes the statement in SUF 5 that inmates had to "sign up" to participate in Ramadan observance. He states that this requirement was not established until 2023, and that in 2022, placement on the "Muslim community roster of adherents" was sufficient to participate on Ramanda observance. ECF No. 48 at 20-21 (Exh. E). Plaintiff also disputes SUFs 6 and 7 to the extent they suggest he did receive Suhoor and Iftar meals in 2022. Id. at 22-27.

**II. Plaintiff's Participation in CHCF Ramadan Observance**

**A. Defendants' Facts**

Plaintiff was on the Ramadan list to participate in religious services, but he was not on the Ramadan meal schedule because he had a medically prescribed purée-diet due to swallowing issues caused by his cancer diagnosis. Therefore, Plaintiff would not receive the same Suhoor and Iftar meals as other Ramadan participants. SUF 8. Instead, Plaintiff received puréed meals that were provided to him in his cell at breakfast, lunch, and dinner times to be eaten at any time in his cell or at Chapel. SUF 9. Plaintiff had the ability to refrigerate and save the meals and consume all three after sunset but chose not to because he said he got too hungry. SUF 10.

Plaintiff claims he was told by another inmate, "Ronnie Beasley," that they had asked Defendant Chaudhry to be removed from their medical diet to receive the standard Iftar and Suhoor meals on the Ramadan schedule. SUF 11. Plaintiff believes Beasley paroled and he has no declaration from him and has not had contact with him. SUF 12. Beasley has not put his medical history at issue and Dr. Chaudhry, due to the Health Insurance Portability and Accountability Act (HIPAA), cannot comment as to whether or not he was her patient. SUF 13. Regardless, Dr. Chaudhry evaluates each of her patients' medical needs individually. SUF 14.

**B. Plaintiff's Rebuttal**

Plaintiff disputes defendants' SUFs 8 and 11-14 regarding his interactions with Ronnie Beasley. He cites Mr. Beasley's situation to refute that his own medically prescribed purée diet was a valid basis to exclude him from the Ramadan meal schedule. Plaintiff explains that he

worked as a porter delivering regular and special meals on the housing unit. On April 3, 2022, his housing mate Ronnie Beasely, who was also on a purée diet due to a cancer diagnosis, told him that Dr. Chaudhry approved his diet change from purée to regular so he could receive Ramadan meals. ECF No. 48 at 28-30 (Exh. H); id. at 37-39 (Exh. K). He has not seen Beasley since Beasley paroled in 2023. Id. at 40-42 (Exh. L).

Plaintiff disputes SUF 9 that he received puréed meals in his cell at breakfast, lunch, and dinner. Plaintiff worked as a porter during breakfast and lunch distributing meals. The only meal he received in his cell was dinner. ECF No. 48 at 31-33 (Exh. I). Plaintiff further disputes that he had the ability to refrigerate meals (SUF 10) and states the pantry refrigerator was not used for that purpose. Id. at 34-36 (Exh. J).

## III. Dr. Chaudhry' Medical Treatment of Plaintiff

### A. Defendants' Facts

Plaintiff went to the emergency room on April 26, 2022, for having bloody stools. The hospital wished to keep him over night and perform a colonoscopy, but Plaintiff checked out against medical advice. SUF 15. On April 28, 2022, Plaintiff had a follow-up appointment with Dr. Chaudhry regarding his issues with his stools and his emergency room visit. SUF 16. Plaintiff alleges that, on April 28, 2022, he asked Defendant Chaudhry to be removed from his puréed diet so that he could receive the same Iftar and Suhoor meals as other inmates and that Defendant Chaudhry denied his request. SUF 17. Plaintiff felt "discriminated" against. SUF 18. For the remainder of Ramadan—only three days—Plaintiff continued to receive puréed meals three times a day, which he could have consumed after sunset. SUF 19. Had Defendant Chaudhry recommended Plaintiff be removed from the puréed diet to receive the normal Iftar and Suhoor meals on April 28, 2022, it is unlikely CHCF could have accommodated the request so quickly with only three remaining days in Ramadan, because a set number of Ramadan meals are prepared three days in advance. SUF 20.

### B. Plaintiff's Rebuttal

Plaintiff disputes that he checked out of the hospital against medical advice on April 26, 2022 (SUF 15). He states that it was a routine examination and that he declined to stay overnight

because there was an important event occurring at CHCF on April 27, 2022. ECF No. 48 at 49-51 (Exh. O). Plaintiff further disputes SUFs 16 and 17, stating that he submitted a ducat on April 3, 2026, requesting to see Dr. Chaudhry so she could approve his Ramadan meals. He states that the follow-up visit with Dr. Chaudhry on April 28, 2022, was a belated response to the ducat. Id. at 52-57 (Exhs. P and Q). Plaintiff claims that had Chaudhry and CHCF immediately granted the ducat and related 602 grievance dated April 3, 2026, he would not have been excluded from the Ramadan meals. Id. at 58-66 (Exhs. R and S).

## IV. Plaintiff's Request for Injunctive Relief

### A. Defendants' Facts

Plaintiff is no longer on the puréed diet and is approved to receive Ramadan meals. He admits his RLUIPA claims are "moot." SUF 21. Defendant Chaudhry is a practicing Muslim herself, has no issues with the Muslim community, and, as a primary care doctor, she treats all inmates with respect in treating their medical conditions. SUF 22. Plaintiff and Dr. Chaudhry had a good relationship and had no issues with one another. SUF 23. In 2022, Plaintiff had a medical reason for receiving puréed meals. Dr. Chaudhry ultimately had no say as to whether Plaintiff was on the Ramadan schedule and could only provide him with medical care, which at the time meant keeping him on the puréed diet. She is not a member of the religious committees or food services, who decide who is on the Ramadan meal schedule. SUF 24.

### B. Plaintiff's Rebuttal

Plaintiff disputes that his RLUIPA claim is moot (SUF 21) because he is now on a "small bite" and "bite size" special diet. ECF No. 48 at 67-69 (Exh. U). Plaintiff also cites other § 1983 actions against Dr. Chaudhry to dispute that she treats all inmates with respect (SUFs 22, 23). Id. at 70-75 (Exhs. V and W). Finally, plaintiff states that in 2022 there were no "religious committees" or "food services" personnel involving in approving Ramadan meals, and that plaintiff would have been automatically enrolled but for Dr. Chaudhry's refusal to release him from his purée diet. Id. at 76-78 (Exh. X.)

////

////

## LEGAL STANDARDS

### I. Summary Judgment

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials

of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Adv. Comm. Note to 1963 Amendments to Fed. R. Civ. P. 56(e)).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**II. First Amendment: Free Exercise Clause**

Incarcerated persons retain their First Amendment rights, including the right to exercise religious practices and beliefs. See McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir. 1987). To implicate the Free Exercise Clause, a plaintiff must demonstrate that prison officials substantially burdened the free exercise of his religion by preventing him from engaging in conduct which he

sincerely believes is consistent with his faith. Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008). The underlying religious belief must be "sincerely held." Malik v. Brown, 16 F.3d 330, 333 (9th Cir.1994); see also Shakur, 514 F.3d at 884-85 (noting that the "sincerity test," not the "centrality test," applies to a free exercise analysis).

"In ruling on a prisoner's First Amendment free exercise claim, [the Court must] first determine whether the challenged prison policy or practice substantially burdened the prisoner's free exercise of his or her religion." Long v. Sugai, 91 F.4th 1331, 1337 (9th Cir. 2024); see also Jones v. Williams, 791 F.3d 1023, 1031 (9th Cir. 2015) ("A person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion"). A substantial burden exists where the state "put [s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Thomas v. Review Board, 450 U.S. 707, 718 (1981). "'A substantial burden . . . places more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Jones, 791 F.3d at 1031-32 (citation omitted).

However, the free exercise right "is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or maintain prison security." McElyea, 833 F.2d at 197; see also Al Saud v. Days, 36 F.4th 949, 957 (9th Cir. 2022) (stating that prisoner rights under the Free Exercise Clause are "necessarily limited by institutional objectives and by the loss of freedom concomitant with incarceration"). Thus, if the prisoner establishes a substantial burden, the Court then applies the "four factors set forth in Turner v. Safley, 482 U.S. 78 [ ] (1987) to determine whether the burden was 'reasonably related to legitimate penological interests.'" Long, 91 F.4th at 1337; Turner, 482 U.S. at 89; Shakur, 514 F.3d at 884. The four Turner factors that bear on whether a legitimate penological interest exists are: "(1) whether there is a valid, rational connection between a state interest and the prison regulation [or restriction]; (2) whether prisoners have an alternative method of engaging in religious practice; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates; and (4) the absence of ready alternatives to the challenged

regulation" or restriction. Walker v. Beard, 789 F.3d 1125, 1138-39 (9th Cir. 2015) (citing Turner, 482 U.S. at 89-90); Jones, 23 F.4th at 1134-35.

**III. RLUIPA**

"RLUIPA guarantees an 'expansive protection for religious liberty.'" Johnson v. Baker, 23 F.4th 1209, 1214 (9th Cir. 2022) (quoting Holt v. Hobbs, 574 U.S. 352, 358 (2015)). It provides "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . unless the government demonstrates that imposition of the burden on that person . . . is in furtherance of a compelling governmental interest . . . and is the least restrictive means of furthering that . . . interest." 42 U.S.C. § 2000cc-1(a).

To state a claim under RLUIPA, a prisoner must show that: (1) he takes part in a "religious exercise," and (2) the State's actions have substantially burdened that exercise. Walker, 789 F.3d at 1134 (citing Shakur, 514 F.3d at 888-89). "If the prisoner satisfies those elements, then the State must prove its actions were the least restrictive means of furthering a compelling governmental interest." Walker, 789 F.3d at 1134 (citing Warsoldier v. Woodford, 418 F.3d 989, 995 (9th Cir. 2005)).

## DISCUSSION

**I. Free Exercise Claim**

**A. Substantial Burden**

Per the screening order, plaintiff is proceeding on his First Amendment free exercise claim against defendant Dr. Chaudhry only. As Dr. Chaudhry does not dispute the sincerity of plaintiff's religious beliefs, see ECF No. 38 at 14, the undersigned starts first with whether defendant Dr. Chaudhry substantially burdened plaintiff's free exercise of religion.

As an initial matter, the parties dispute the scope of Dr. Chaudhry's involvement in the alleged deprivation. Plaintiff maintains he submitted a healthcare grievance and a ducat to see Dr. Chaudhry on April 3, 2022, two days into Ramadan, that put her on notice. See ECF No. 48 at 58-66 (Exhs. R and S). Dr. Chaudhry states that she was not involved in the CHCF grievance process and was not aware of the grievance until this litigation. Supplemental Declaration of U. Chaudhry ¶ 2, ECF No. 51-1 at 2. She adds plaintiff alleges she refused to lift the purée diet

during the appointment on April 28, 2022, which at most inconvenienced his free exercise right for the last three days of Ramadan. ECF No. 38 at 18.

The undersigned agrees with defendant that plaintiff's evidence does not raise a genuine issue as to Dr. Chaudhry's knowledge of his ineligibility for Sahoor meal until their appointment on April 28, 2022, three days before the end of Ramadan. In his grievance dated April 3, 2022, he states he was informed of his ineligibility by unnamed "medical personnel," not Dr. Chaudhry. ECF No. 48-1 at 8. Without additional facts regarding her involvement, the fact alone that plaintiff submitted a grievance and ducat to see her on April 3 does not establish a dispute as to her knowledge of his ineligibility prior to their appointment on April 28. See Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."). Still, despite the limited scope of Dr. Chaudhry's potential liability, the undersigned finds that her disputed refusal to lift plaintiff's purée diet for the final three days of Ramadan, and the resulting continued delivery of those puréed meals on the regular schedule, is minimally sufficient to establish a substantial burden on his free exercise of religion. See Thompson v. Holm, 809 F.3d 376, 380 (7th Cir. 2016) (finding the denial of Ramadan meal for two days was not a "de minimis" burden where plaintiff was "forced to choose between foregoing adequate nutrition or violating a central tenant of his religion," and "the anxiety left him unable to practice Ramadan properly"); Keal v. State of Washington, No. C 05-5737 RJB, 2007 WL 906085, at *8 (W.D. Wash. Mar. 23, 2007) (denial of Ramadan meals for five days was a substantial burden on free exercise).

Defendant's primary argument is that that plaintiff was merely inconvenienced because he could have preserved the meals delivered on the normal schedule for consumption after sundown. The undersigned is not persuaded. In Long v. Sugai, the plaintiff similarly alleged that prison staff delivered his evening meal at about 3:30 p.m., even though he could not break his Ramadan fast until sundown, at about 7:30 p.m. 91 F.4th at 1335. The Ninth Circuit reversed the lower court's grant of summary judgment to defendants, holding that "[o]ur own cases as well as out-of-circuit cases . . . clearly establish that delivery of Long's evening meal at 3:30 p.m. during

Ramadan substantially burdened his free exercise of religion." Long, 91 F.4th at 1338. In so finding, the Ninth Circuit endorsed Makin v. Colorado Department of Corrections, 183 F.3d 1205 (10th Cir. 1999), another case involving the timing of meal delivery during Ramadan:

> There, a Muslim prisoner housed in punitive segregation during Ramadan was unable to eat his evening meal when it was delivered to his cell. Id. at 1208–09. To maintain his fast, he saved his "supper and food such as dry cereal and crackers . . . from lunch and breakfast" to eat after sundown. Id. at 1209. Although the inmate managed to fast under these circumstances for the entire month of Ramadan, the Tenth Circuit held that the prison's actions infringed on the inmate's right to free exercise of his religion[.]

Long, 91 F.4th at 1338 (citing Makin, 183 F.3d at 1208-09). The defendants in Makin argued no substantial burden because the plaintiff was able to fast for the entire month of Ramadan despite receiving meals at times when he could not eat. The Tenth Circuit rejected defendants' argument, emphasizing that it "ignores the religious experiential aspects of Ramadan beyond the fasting itself." Makin, 183 F.3d at 1212–13.

Defendant does the same here. Even if plaintiff had been able to work around the regular meal schedule to keep his fast (e.g., refrigerating puréed meals to eat after sunset) as defendant suggests he could have, it would not diminish the substantial burden on his full enjoyment of the spiritual experience of Ramadan. This is even more so the case here where plaintiff's complaint identifies the timing of meal delivery as the main impediment to his ability to fast. See ECF No. 1 at 5 (identifying the denial of his request to "receive puréed 'Sahoor' meal" on the Ramadan schedule as his injury).

The undersigned does not find defendant's district-court authorities persuasive considering the clear applicability of the Ninth Circuit's decision in Long. Further, defendant's main authority, Nance v. Miser, No. CV13-0313-PHX-SMM (DKD), 2014 WL 11332298 (D. Ariz. Sept. 22, 2014), aff'd, 624 F. App'x 610 (9th Cir. 2015), is factually distinguishable. There, the plaintiff received the Sahoor meal bag every evening but refused to save it for breakfast out of concern that the food would spoil. The Court found that plaintiff was not under pressure to betray his religious beliefs and that the prison's actions "attempted to enable his participation in all Ramadan activities." Nance, 2014 WL 11332298, at *4. That is not the case here where plaintiff

did not receive Sahoor meals and felt pressure to break his fast due to hunger experienced while receiving puréed meals on the regular meal schedule. Accordingly, the undersigned finds that there are genuine issues of material fact as to whether defendant Chaudhry substantially burdened plaintiff's free exercise of religion.

Finally, the facts plaintiff disputes regarding prison operations are largely immaterial to this analysis. For instance, while plaintiff disputes whether he was required to "sign up" to participate in Ramadan observance (SUF 5), the Parties agree that plaintiff did not receive Sahoor meals not because he failed to apply, but because he was on a medical purée diet. See SUF 1; ECF No 48-1 at 8-9 (plaintiff's medical grievance citing "purée diet" as basis of exclusion). Even if a sign-in requirement was material to this case, which it is not, the Ninth Circuit has held that an application to participate in a prison's religious diet program "is by no stretch a 'substantial' burden." Resnick v. Adams, 348 F.3d 763, 768 n.6 (9th Cir. 2003).

**B. Legitimate Penological Interest (Turner Factors)**

Having found that there are genuine issues of material fact as to whether Dr. Chaudhry substantially burdened plaintiff's religious practice, the undersigned next applies the Turner factors to determine whether she had a legitimate penological interest in doing so.

The first Turner factor asks whether there is a "valid, rational connection" between the regulation or restriction at issue and the legitimate government interest justifying it. Turner, 482 U.S. at 90. Defendant identifies the relevant state regulation as Cal. Code Reg., tit. 15, § 3054, ECF No. 38 at 10, which in April 2022 read: "Medical diets shall take precedence over religious diets."[2] Cal. Code Regs., tit. 15, § 3054(d). There does not appear to be any authority addressing this specific provision. But as defendant notes, in the context of free exercise and related claims, numerous courts have recognized that prisons have a legitimate interest in prioritizing the health of incarcerated individuals over a religious diet. See e.g., Lewis v. Hilbert, No. 3:23-CV-05539-RSL-BAT, 2024 WL 1862063, at *7 (W.D. Wash. Feb. 26, 2024) ("The prison has a legitimate

---

[2] This version was effective through Dec. 31, 2022. The current version of § 3054, effective Jan. 1, 2023, similarly states that "[m]edical diets shall take precedence over RPEDs [Religious Personal Ethical Diets]." Cal. Code Regs., tit. 15, § 3054(c).

penological interest in promulgating a policy that a prisoner must clear a prescribed therapeutic diet with the health provider before the prison may replace that meal with a religious meal."), report and recommendation adopted, No. C23-5539-RSL-BAT, 2024 WL 1860166 (W.D. Wash. Apr. 29, 2024); Mills v. McGarry, No. 2:12-CV-02873, 2012 WL 7493529, at *7 (S.D.W. Va. Dec. 11, 2012) ("[T]he priority of ensuring that the medical needs of an inmate are properly met is a compelling governmental interest that justifies the placement of the described substantial burden on the plaintiff's religious exercise), report and recommendation adopted in part, rejected in part on other grounds, No. 2:12-CV-02873, 2013 WL 705866 (S.D.W. Va. Feb. 26, 2013).

The undersigned is persuaded and finds that Defendant's refusal to lift the puréed diet at the appointment on April 28, 2022, furthered this legitimate government interest, particularly when considering plaintiff's undisputed health record at the time. Plaintiff, who was 64 years old in April 2022, was diagnosed with multiple myeloma, a type of cancer, in 2019 and had difficulty swallowing. Garland Dep. at 7:22-25, 8:1, ECF No. 38-5 at 11-12. In April 2022, Dr. Chaudhry prescribed him a high caloric, puréed diet out of concern for his weight loss of roughly 40 pounds over the past few years and ongoing cancer treatments. Declaration of U. Chaudhry ("Chaudhry Decl.") ¶¶ 5-7, ECF No. 38-4 at 2 ("Chaudhry Decl."); id. at 6 (Exh. 1). Two days prior to the medical appointment on April 28, 2022, plaintiff was transported to a hospital after reporting blood in his stool. Chaudhry Decl., Exh. 1, ECF No. 38-4 at 6. Plaintiff disputes that he was transported as an emergency or that he signed out against medical advice, ECF No. 48 at 49-51, but does not dispute the extent of his symptoms at that time. Accordingly, the undersigned finds that the first Turner factor weights in defendant's favor.

The second Turner factor considers whether plaintiff has an alternative means of practicing his religion. The relevant inquiry under this factor is not whether the incarcerated person has an alternative means of engaging in the particular religious practice that he or she claims is being affected; rather, the Court is to determine whether the incarcerated persons have been denied all means of religious expression. Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993) 877 (citing O'Lone v. Estate of Shabazz, 482 U.S. 342, 351-52 (1987)). Again, the undersigned does not find defendant's argument that plaintiff could simply save his puréed meals to consume

later persuasive. But while it appears CDCR could hypothetically serve plaintiff puréed meals on the Ramadan schedule, plaintiff does not dispute Dr. Chaudhry's statement that she had no control over this decision. SUF 24. Thus, the second factor also favors defendant Chaudhry.

The third factor considers "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." Turner, 482 U.S. at 90. "When accommodation of the right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of correctional officers." Id. Defendant points to the public policy behind Cal. Code Regs., tit. 15, § 3054(c), arguing that prioritizing religious diets over healthcare needs would put physicians in a "Catch-22": "[G]et sued for not removing a medically necessary prescription or get sued if they do remove a medically necessary prescription and the patient gets hurt because the doctor failed to treat them properly." ECF No. 38 at 17. Plaintiff offers no evidence or argument in opposition. The undersigned finds this policy argument persuasive and tilts the third factor toward defendant. See Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (Court must afford "substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.").

The last Turner factor asks whether the presence of ready alternatives undermines the reasonableness of the regulation or restriction. Turner, 482 U.S. at 90. The crux of plaintiff's opposition—that Dr. Chaudhry permitted Ronnie Beasley, plaintiff's housing mate who was also battling cancer, to participate in Sahoor meals—fits most naturally here. The undersigned agrees with defendant that Mr. Beasley's unsworn statements that Dr. Chaudhry granted his request to participate in Sahoor meals, contained within plaintiff's declarations, are double hearsay and insufficient to raise a genuine dispute of fact as to the availability of ready alternatives. See Fed. R. Civ. P. 56(c)(4); Jones, 791 F.3d at 1032 (unsworn statements of the prison cook who told plaintiff that prison administrator contaminated his food are hearsay). Even assuming Chaudhry determined Mr. Beasley's individualized medical needs allowed for his participation in Sahoor, it does not naturally follow that the same decision was warranted under plaintiff's circumstances—

particularly given the absence of a declaration from Mr. Beasley or any other information in the record regarding his health. Further, plaintiff's unsupported assertions regarding Mr. Beasley do not create a triable issue over Dr. Chaudhry's asserted lack of control over meal scheduling. SUF 24.

Defendant also offered the declaration of CHCF Community Resource Manager J. Gin, who testified that CHCF prepares Sahoor meals three days in advance. Thus, had Dr. Chaudhry granted plaintiff's request on April 28, 2022, CHCF's regular meal schedule would not have incorporated meals for plaintiff before Ramadan ended. Declaration of J. Gin ¶ 10, ECF No. 38-3 at 2-3. Plaintiff counters that CHCF could have provided the meals for most of Ramadan had they granted his April 3, 2022, grievance and ducat. ECF No. 48 at 58-66 (Exhs. R and S). But as noted above, plaintiff has failed to raise a genuine issue as to defendant Chaudhry's knowledge of his ineligibility for Sahoor meal until their appointment on April 28, 2022. Thus, considering the absence of facts that would be admissible in evidence regarding Mr. Beasley, as well as the undisputed CHCF meal preparation practicalities that likely would have prevented plaintiff from receiving Sahoor meals had Dr. Chaudhry granted his request on April 28, 2022, the undersigned finds that the final Turner factor favors defendant.

On balance, the Turner factors weigh toward Dr. Chaudhry. Therefore, although the provision of puréed meals during regular meal schedule substantially burdened plaintiff's Ramadan observance, Dr. Chaudhry's alleged refusal to lift his puréed diet served legitimate penological purposes and she had no control over CHCF's Ramadan meal delivery schedule. For these reasons, the undersigned recommends summary judgment be granted to Dr. Chaudhry on plaintiff's free exercise claim and declines to address her qualified immunity arguments.

## II. RLUIPA Analysis

### A. Mootness

Defendant CDCR first claims that plaintiff's RLUIPA claim is moot. This argument hinges on an exchange during plaintiff's deposition on September 19, 2025, in which he agreed his claim for injunctive relief was "moot" because he was no longer on a puréed diet. Deposition of Shaun Darnell Garland ("Garland Dep.") at 29:4-11, ECF No. 38-5 at 30. In response, plaintiff

filed a verified declaration stating that he received Sahoor and Iftar meals for the first three days of Ramadan in May 2026, with medical staff seemingly putting aside his "small bite" diet. ECF No. 48-1 at 2. After three days, plaintiff was returned to his "small bite" diet and "prevented from receiving the Ramadan meals." Id.

Courts must "determine questions of mootness in light of the present circumstances[.]" Mitchell v. Dupnik, 75 F.3d 517, 528 (9th Cir. 1996) (citing Weinstein v. Bradford, 423 U.S. 147, 148 (1975)). Plaintiff's statements regarding the denial of Sahoor meal in May 2026, several months after his September 2025 deposition, creates a genuine dispute as to whether his RLUIPA claim is in fact moot.

Even if plaintiff's claim was moot, the court may still review it if it implicates a practice that is "capable of repetition yet evading review." Shell Offshore, Inc. v. Greenpeace, Inc., 709 F.3d 1281, 1287 (9th Cir. 2013). "The mootness exception for claims that are capable of repetition, yet evade review, 'is limited to extraordinary cases in which (1) the duration of the challenged action is too short to be fully litigated before it ceases, and (2) there is a reasonable expectation that the plaintiff will be subjected to the same action again.'" Alvarez v. Hill, 667 F.3d 1061, 1064 (9th Cir. 2012) (quoting C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist., 654 F.3d 975, 983 (9th Cir. 2011)). Plaintiff's RLUIPA claim fits this exception given Ramadan's short, one-month window and plaintiff's undisputed health issues. The alleged change in circumstances from plaintiff's deposition in September 2025, where he expressed no concerns regarding his access to Sahoor meals in 2025, to the removal of his Sahoor meal access mid-Ramadan observance in May 2026 illustrates this point. For these reasons, the undersigned will proceed to the merits of plaintiff's RLUIPA claim.

**B. Merits Analysis**

**i. Religious Exercise**

Having determined plaintiff's claim is not moot, the undersigned turns to the elements of RLUIPA claim against CDCR and defendant Chaudhry in her official capacity. First, plaintiff must prove that he takes part in a "religious exercise." Walker, 789 F.3d at 1134. RLUIPA defines a religious exercise to include "any exercise of religion, whether or not compelled by, or

central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). There is no question that fasting during Ramadan is a religious exercise. In his own words, during Ramadan, "[t]here's no eating, no drinking during those [daylight] hours to – according to tradition, to focus on our faith." Garland Dep. at 13:22-24, ECF No. 38-5 at 17; see also Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) ("Lovelace's observance of Ramadan, the Islamic holy month of fasting and prayer, qualifies as 'religious exercise' under [RLUIPA].") (citation omitted).

**ii. Substantial Burden**

Next, plaintiff must show that the State's actions have substantially burdened that exercise. Walker, 789 F.3d at 1134. "To constitute a substantial burden, a limitation of religious practice "must impose a significantly great restriction or onus upon such exercise." Id. at 1135 (quoting San Jose Christian Coll. v. City of Morgan Hill, 360 F.3d 1024, 1034 (9th Cir. 2004)). For the same reasons identified as to plaintiff's First Amendment claim, the undersigned finds that defendants' provision on a purée diet on a regular-meal schedule substantially burdened plaintiff's religious practice of fasting during Ramadan. See Meza v. Cal. Dep't of Corrs., No. 1:17-cv-00894-DAD-EPG, 2017 WL 5500625, at *5 (E.D. Cal. Nov. 16, 2017) ("[T]he RLUIPA substantial burden test is analyzed within the same Free Exercise Clause framework") (citing Int'l Church of Foursquare Gospel v. City of San Leandro, 673 F.3d 1059, 1067 (9th Cir. 2011)); Warsoldier, 418 F.3d at 995-96 (citing to First Amendment cases to determine what constitutes a substantial burden under RLUIPA). Further, plaintiff's participation in other Ramadan activities, which was relevant to the Turner factors, "has no bearing on the [RLUIPA] 'substantial burden' inquiry." Johnson, 23 F.4th at 1216 (quoting Holt, 574 U.S. at 361).

**iii. Compelling Interest**

The burden then shifts to defendants to show the restriction on plaintiff's religious practice is (1) in furtherance of a compelling governmental interest and (2) the least restrictive means of serving that interest. 42 U.S.C. § 2000cc-1(a). "[T]he government may not satisfy the compelling interest test by pointing to a general interest[.]" Johnson, 23 F.4th at 1216. "RLUIPA . . . contemplates a more focused inquiry and requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law to the person—the

particular claimant whose sincere exercise of religion is being substantially burdened." Holt, 574 U.S. at 363 (internal quotations and citation omitted).

Defendants argue, and the undersigned agrees, that they have a compelling interest "in Plaintiff's health and safety to adhere to his medically prescribed diet." ECF No. 51 at 8; see also Warsoldier, 418 F.3d at 1000 (noting in RLUIPA action that correctional facilities have a compelling interest in protecting inmate health generally); Hodges v. Thomas, No. CV 22-00132-PHX-DWL-MHB, 2023 WL 2725447, at *7 (D. Ariz. Mar. 3, 2023) (concluding "prisoner health and safety is undoubtedly a compelling governmental interest" in denying RLUIPA challenge to prison policy restricting purchase of dates more than 30 days in advance of Ramadan). Defendants' medical record evidence, particularly the declarations of his treating physician Dr. Chaudhry, is sufficient to show a compelling interest as applied to plaintiff's health specifically. Plaintiff does not dispute the medical evidence and instead relies exclusively on unsupported assertions regarding the prison's different treatment of his allegedly similarly situated housing mate, Mr. Beasley, who received the Sahoor meal. See ECF 48, Exhs. H, K, L, M, Q, S, and T. Accordingly, there are no triable issues as to defendants' compelling interest in restricting plaintiff's access to the Sahoor meal contents for medical purposes.

**iv. Least Restrictive Means**

Plaintiff's RLUIPA claim then turns on whether the provision on a puréed diet on the regular meal schedule was the least restrictive means of serving that interest. RLUPIA "mandates a stricter standard of review for prison regulations that burden the free exercise of religion than the reasonableness standard under Turner." Shakur, 514 F.3d at 888 (citing Warsoldier, 418 F.3d at 994). "A prison 'cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice.'" Id. at 890 (quoting Warsoldier, 418 F.3d at 996).

The undersigned finds it necessary to first define the injunctive relief plaintiff seeks. While plaintiff is not entirely clear in his opposition, there is support in his other verified filings that the injunctive relief he sought was a puréed meal on the Ramadan schedule. See ECF No. 1 at 6, ¶ 7 (describing his grievance as "particularly asking that the 'Sahoor' be puréed"); ECF No.

48-1 at 8 (grievance relief includes a request that "he receives a 'Sahoor meal' that is puree[.]"); but see Garland Dep. At 21:25, 22:1-11 (explaining that his request for puréed Sahoor was an "alternative request if I could not receive the regular Sahoor" and stating his preference in 2022 was regular Sahoor). But despite some inconsistency as to his preferred meal, plaintiff's focus throughout this action is how the delivery of his medically prescribed meals (puréed or, currently, "small bite") on a regular schedule interferes with his Ramadan observance. See Garland Dep. at 23:17-25, 24:1 (confirming his main issue in 2022 was the timing of the meals).

Dr. Chaudhry thoroughly describes why she would not recommend lifting the puréed diet. But does not state that the delivery of puréed meals on the regular schedule was medically necessary. She in fact states that she has "no control over food services and how they distribute meals." Chaudhry Decl. ¶ 11, ECF No. 38-4 at 3. Defendants raise this alternative in the Turner factor section of their opening brief but only to demonstrate Dr. Chaudhry's—not defendant CDCR's—lack of control over meal delivery: "The only alternative available here would be to have CDCR serve Plaintiff his puréed meals on the Ramadan schedule. However, that was not Dr. Chaudhry's decision or within her control." ECF No. 38 at 18.

This begs the question why CDCR could not deliver plaintiff's medically prescribed puréed or "small bite" meals on the Ramadan schedule so that he could fast. While there may be medical and/or administrative barriers to granting such an accommodation, see Ward, 1 F.3d at 877 ("The prison has a legitimate interest in running a simplified food service, rather than one that gives rise to many administrative difficulties."), there is no evidence of any in the record. Thus, given the absence of factual development of this potential alternative, the undersigned finds that defendants have not met their burden as to whether the provision of a medical diet on the regular meal schedule was the least restrictive means of serving their compelling, healthcare-related interests. Accordingly, the undersigned recommends that their motion for summary judgment on plaintiff's RLUIPA claim for injunctive relief be denied.

////

////

////

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that plaintiff's request for leave to file a sur-reply (ECF No. 52) is GRANTED.

Additionally, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment be GRANTED IN PART and DENIED IN PART as follows:

1. GRANTED in favor of defendant Dr. Chaudhry in her individual capacity as to plaintiff's First Amendment Free Exercise claim; and

2. DENIED as to plaintiff's RLUIPA claim for injunctive relief against defendants California Department of Corrections and Rehabilitation ("CDCR") and Dr. Chaudhry in her official capacity.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 25, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE